UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANGUS JAMES TONEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00386-JPH-MJD |
| | ) |
| RICHARD BROWN Former Superintendant at | ) |
| Wabash Valley Correctional Facility, et al., | ) |
| | ) |
| Defendants. | ) |

**Order Granting in Part and Denying in Part Motion for Summary Judgment and Directing Further Proceedings**

Plaintiff, Angus Toney, an inmate at Wabash Valley Correctional Facility (Wabash Valley), brings this action pursuant to 42 U.S.C. § 1983, alleging that his long-term confinement in segregation violated his Fourteenth Amendment due process rights and his Eighth Amendment right to be free from cruel and unusual punishment. The defendants claim they are entitled to partial summary judgment because Mr. Toney failed to exhaust available administrative remedies. For the following reasons, the motion for summary judgment, dkt. [26], is **granted in part and denied in part**.

**I. Standard of Review**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir.

1

2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## II. Statement of Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Toney as the nonmoving party. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. Conditions of Confinement

Mr. Toney was held in the special confinement unit (SCU) at Wabash Valley from November 7, 2014, to January 22, 2019. Dkt. 1 at 7. In his complaint, he alleged that during his confinement in the SCU he was subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment, including being confined to his noisy cell for 23 hours a day; being compelled to take cold showers in the winter; being escorted to solitary recreation on a dog leash while shackled; sleeping on a concrete slab despite back problems; and having feces and urine thrown at him by other inmates without prison staff intervention. *Id.* at 9–10.

The Indiana Department of Correction has an offender grievance process that is intended to promote the resolution of a broad range of issues that an inmate may have. Dkt. 26-1 at ¶¶ 7–8. Wabash Valley had an offender grievance process in place during Mr. Toney's incarceration in the SCU. Dkt. 26-1 at ¶ 10. While the process was periodically revised, it always required the inmate to (1) try to resolve his concern informally, (2) file a written grievance and (3) appeal the response

to the grievance. *Id.* at ¶¶ 11–12 (2010 procedure), ¶¶ 21–22 (2015 procedure), ¶¶ 31–32 (2017 procedure).

The conditions of Mr. Toney's confinement were grievable issues. Dkt. 26-1 at ¶ 46. Mr. Toney did not file any grievances related to these conditions. *Id.* at ¶¶ 44–45.

### B. Classification Process

Inmates placed in the restrictive status housing are there because prison officials have determined that placement "in general population would pose a serious threat to life, property, self, staff, or other offenders, or the security or orderly operation" of the prison. Dkt. 26-6 at ¶ 6. Disciplinary department-wide restrictive status results from disciplinary proceedings and a sanction, whereas administrative restrictive status housing applies to an inmate who is considered a continued threat to himself or others. *Id.* at ¶¶ 8–9. Mr. Toney was in disciplinary department-wide restive status housing from November 2014 to December 2015, before being transferred to administrative department-wide restrictive status housing. *Id.* at ¶ 7.

Under Indiana law, inmates who are segregated for safety reasons must receive a review "once every thirty (30) days to determine whether the reason for segregation still exists." Ind. Code § 11-10-1-7(b). This requirement does not apply to disciplinary segregation. Ind. Code § 11-10-1-7(c).

The grievance process does not apply to housing classification decisions. Dkts. 26-2 at 6; 26-3 at 4; 26-4 at 3. To challenge his initial or continued placement in segregation, an inmate must file a classification appeal by completing State Form 9260, "Classification Appeal," within ten working days from the date that he receives the classification decision. Dkt. 26-6 at ¶ 10. He must then submit that form to the warden. Dkt. 26-7 at 25; dkt. 26-8 at 2–3. The warden then reviews the classification decision and appeal, renders a decision on the appeal, writes the decision on State

Form 9260, and returns the completed form to the inmate. Dkt. 26-7 at 25–26. According to the policy, the warden is "the final administrative review for intra-facility classification decisions." *Id.* at 26.

The right to appeal classification decisions is explained to inmates during orientation upon their arrival to prison, and copies of the applicable policies are available in the law library. Dkt. 26-6 at ¶ 12.

Mr. Toney testified that during his placement in the SCU, he did not receive meaningful periodic reviews to determine whether he should be released from segregation. Dkt. 35-2 at ¶ 2 (Toney affidavit). On July 6, 2017, he wrote to unit team manager Jerry Snyder asking how long he would have to remain in the SCU. Dkt. 35-3. Mr. Snyder responded on July 6, "We will review monthly and you can request a full review every 90 days." Dkt. 35-3. On July 16, Mr. Toney wrote to Mr. Dugan asking for a "full A.S. [administrative segregation] review packet," and someone replied, "Mr. Purcell does the full AS reviews." Dkt. 35-4. On July 19, Mr. Toney wrote to Mr. Purcell asking for a review packet, and he received a response signed by "R.P." (presumably Randall Purcell), stating, "Just came off of DWRH/D on 5/25/17. May request review on 11/25/17." Dkt. 35-5. Mr. Toney again requested a review packet from Mr. Purcell on July 20, and Mr. Purcell responded, "You were just removed from DWRH/D to DWRH/A on 5/25/17. You may request a DWRH/A review after being DWRH/A 6 months," i.e. in November.[1] Dkt. 35-6.

On September 21, 2017, Mr. Toney had a classification review hearing. Dkt. 26-6 at ¶ 14. The classification hearing report was signed by Mr. Purcell and stated, "Remain DWRH/A Pending DWRH/A Status Review." Dkt. 26-8 at 1. Mr. Toney received the decision on October

---

[1] The Court understands "DWRH/D" to mean disciplinary department-wide restrictive housing and "DWRH/A" to mean administrative department-wide restrictive status housing.

15, and on October 23, he completed State Form 9260. *Id.* at 2. The instructions on the top of the form stated,

> Instructions: 1. Intra-Facility classification appeals, send to facility head
> 2. Inter-Facility-Department classification appeals, send to:
> Director of Classification
> 302 West. Washington Street, Room E334
> Indianapolis, Indiana 46204

*Id.* at 2. Mr. Toney sent the form to the director of classification. On October 31, 2017, Sonya Phipps from the Classification Division wrote to Mr. Toney, "You must first appeal a classification decision to the Warden. If you do not agree with response of the Warden, you may then appeal to the Director of Classification at Central Office." *Id.* at 3.

According to Wabash Valley classification specialist Matt Leohr, Mr. Toney "did not appeal his placement on restricted status housing again after his attempt failed to follow the applicable procedures after the September 21, 2017 classification hearing." Dkt. 26-6 at ¶ 15.

Mr. Toney remained in the SCU for another year and four months.

### III. Discussion

The defendants argue that Mr. Toney failed to exhaust his available administrative remedies as to (1) his Eighth Amendment conditions-of-confinement claim for the entire period he was in the SCU and (2) his Fourteenth Amendment due process claim after his September 21, 2017, classification hearing.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular

5

episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted). "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. It is the defendants' burden to establish that the administrative process was available to Mr. Toney. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

### A. Eighth Amendment Condition-of-Confinement Claim

Mr. Toney does not dispute that he did not file any grievance related to the conditions of his confinement in the restricted housing unit, and he "voluntarily relinquishes" that claim. Dkt. 35 at 9. Accordingly, the defendants' motion for summary judgment is **granted** to the extent that Mr. Toney's Eighth Amendment conditions-of-confinement claim is **dismissed**.

### C. Due Process Claim

Mr. Toney did not designate evidence showing that he attempted to appeal the classification process after the September 2017 decision. He argues, however, that the grievance procedure was unavailable to him because (1) the September 2017 decision failed to provide any reason for his continued placement in the SCU, making any appeal of the denial "inherently futile," and (2) Mr. Purcell and Mr. Snyder's contradictory statements to Mr. Toney about his eligibility for review obscured the administrative process.[2] Dkt. 35 at 8–9.

Mr. Toney's first argument—that any appeal would have been futile—is undercut by the fact that Mr. Toney tried to file a classification appeal but submitted it to the wrong person. Further, "[a]n inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005).

His second argument—that mixed messaging obscured the process such that it became "so opaque" as to be "incapable of use," *Ross*, 136 S. Ct. at 1859—is stronger. "Grievance procedures must be transparent." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 834 (7th Cir. 2020). Mr. Purcell twice informed Mr. Toney that he would not be eligible for a complete review of his housing status until November. Dkts. 35-5 and 35-6. These statements on their own may not have been enough to defeat the defendants' argument that Mr. Toney failed to properly exhaust the September 2017 classification decision. After all, the Central Office responded to Mr. Toney and informed him that he had to first appeal the decision to the Warden, which Mr. Toney failed to do.

---

[2] Mr. Toney focuses much of his brief on whether his continued placement in the SCU after September 21, 2017, implicated his right to due process and whether he received meaningful reviews. Dkt. 35 at 4–8. The Court does not address those issues—which go to the merits of Mr. Toney's claim—in this order which is limited to resolving Defendants' motion for summary judgment based on failure to exhaust administrative remedies.

7

The burden is on the defendants to prove the availability of an administrative remedy. *Thomas*, 787 F.3d at 847. Here, the defendants have designated no evidence that Mr. Toney received another review after the September 2017 hearing. If there were no subsequent reviews, there was nothing for Mr. Toney to appeal. Dkt. 26-6 at ¶ 10 (appeal must be made within ten working days after offender receives classification decision). And whether Mr. Toney received meaningful periodic reviews is a material issue of fact; indeed, it is the core issue of the case. By the time Mr. Toney received the letter from Central Office telling him he needed to file the classification appeal with the warden, he should have already had another 30-day classification review on or around October 21.[3] There is no evidence that he had a classification review in October, or in the subsequent fourteen months before his release from segregation.

Accordingly, the undisputed evidence is that the grievance procedure was unavailable to Mr. Toney to challenge his continued placement in the SHU after September 21, 2017, because there is no evidence that any subsequent reviews occurred that would have triggered his obligation to exhaust. Accordingly, the defendants' motion for summary judgment, dkt. [26] is **denied** as to his Fourteenth Amendment due process claim.

### IV. Rule 56(f) Notice and Further Proceedings

For the foregoing reasons, the defendants' motion for summary judgment is **granted in part and denied in part**. The defendants are entitled to summary judgment with respect to Mr. Toney's claim that particular conditions of confinement violated his Eighth Amendment rights, and accordingly his conditions-of-confinement claim is **dismissed**. Mr. Toney is entitled to summary judgment with respect to the claim that administrative remedies were not available to challenge his classification after his September 21, 2017 hearing. Therefore, pursuant to Rule

---

[3] Administrative remedies were available for some time period after the September review, but without evidence of when Mr. Toney's next review was, the Court cannot identify that time period.

56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Mr. Toney's favor on the due process claim. The defendants shall have **through October 22, 2021,** in which to respond to the Court's notice. Alternatively, they may withdraw their affirmative defense by this date.

**SO ORDERED.**

Date: 9/22/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ANGUS JAMES TONEY
162450
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Andrea Lynn Ciobanu
CIOBANU LAW, PC
aciobanu@ciobanulaw.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com

W. Andrew Kirtley
INDIANA ATTORNEY GENERAL
andrew.kirtley@atg.in.gov