UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANGUS JAMES TONEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-cv-00386-JPH-MJD ) |
| BROWN, et al., | ) ) ) |
| Defendants. | ) |

### Order Granting in Part and Denying in Part Motion for Summary Judgment on Exhaustion Defense and Directing Further Proceedings

Plaintiff Angus Toney was housed in the restrictive housing unit, also known as segregation or solitary confinement, at Wabash Valley Correctional Facility from November 2014 to January 2019. He filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that his long-term confinement in segregation violated his Fourteenth Amendment due process rights and his Eighth Amendment right to be free from cruel and unusual punishment.

The defendants moved for partial summary judgment for failure to exhaust administrative remedies. Dkt. 26. The Court granted the motion with respect to Mr. Toney's Eighth Amendment claims and denied it with respect to claims that Mr. Toney failed to exhaust classification decisions after September 21, 2017, because the defendants provided no evidence that any subsequent reviews of Mr. Toney's placement in the restrictive housing unit occurred. Dkt. 38. The Court provided the defendants notice of its intent to grant summary judgment in Mr. Toney's favor pursuant to Federal Rule of Civil Procedure 56(f)(1) and provided time for the defendants to respond. *Id.* at 8–9.

1

The parties have provided additional evidence and argument. For the following reasons, the Court finds that administrative remedies were not available to Mr. Toney before February 1, 2018, but thereafter Mr. Toney failed to exhaust available administrative remedies by failing to appeal his classification report after his annual review hearing. Accordingly, summary judgment is **granted in part and denied in part**.

## I.
## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman,* 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks,* 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

## II.
## Statement of Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively

true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Toney as the nonmoving party. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. Classification Process

Inmates placed in restrictive status housing are there because placement "in general population would pose a serious threat to life, property, self, staff, or other offenders, or the security or orderly operation" of the prison. Dkt. 26-6 at ¶ 6. Disciplinary department-wide restrictive status ("DWRS/D") results from disciplinary proceedings and a sanction, whereas administrative restricting status housing ("DWRH/A") applies to an inmate who is considered a continued threat to himself or others. *Id.* at ¶¶ 8–9.

Under Indiana statute, inmates in administrative restrictive status housing must receive a review "once every thirty (30) days to determine whether the reason for segregation still exists." Ind. Code § 11-10-1-7(b). A written status report regarding each 30-day review recommends whether the inmate should remain in restrictive housing. *See, e.g.* dkt. 39-2 at 2; dkt. 26-7 at 97. The 30-day status reports are titled "WVCF Secured Housing Unit Department Administrative Restrictive Status Housing Review", and reports issued after classification hearings are on State Form 3412 and titled "Report

of Classification Hearing." *Compare* dkt. 39-2 at 1 (example of a 30-day status report) *with id.* at 2 (Report of Classification Hearing).

Inmates in administrative restrictive status housing periodically have other types of classification reviews in addition to the 30-day reviews, including an annual review. Dkt. 26-6 at 3, ¶¶ 11-14; dkt. 26-7 at 22 (IDOC Classification Manual, listing types of hearings); dkt. 39-2 (Annual Review Hearing Notification, State Form 7672).

To challenge initial or continued placement in segregation, an inmate must file a classification appeal. Dkt. 26-6 at ¶ 10. The right to appeal classification decisions is "explained to offenders *during orientation upon an offender's initial commitment to IDOC*," and copies of the policy are available in the law library. *Id.* at ¶ 12 (emphasis added). The Indiana Department of Correction's Adult Offender Classification Policy Manual ("Classification Policy"), which went into effect on November 1, 2015, explains the classification appeal process.[1] *Id.* at ¶¶ 10–11; dkt. 26-7.

The Classification Policy provides that, to appeal an intra-facility classification decision, an inmate must submit a State Form 9260, "Classification Appeal," to the Warden within ten working days of receiving a classification decision from the Supervisor of Classification. Dkt. 26-7 at 25.[2]

---

[1] The defendants filed three versions of the grievance process policy that were in effect during Mr. Toney's placement in segregation, dkts. 26-2, 26-3, and 26-4, but only one version of the Classification Policy, dkt. 26-7. Thus, there is no evidence in the record that there was a similar procedure in place before the November 1, 2015, policy.

[2] In addition to the term "warden", the IDOC has used the terms "facility head" and "superintendent" to refer to the warden of a facility. *See* dkt. 26-8 at 2 (State Form

4

The Warden reviews the appeal, provides a decision on State Form 9260, and returns the form to the inmate and places a copy in his institutional packet. *Id.* at 25–26. According to the policy, the Warden is "the final administrative review for intra-facility classification decisions." *Id.* at 26. If an inmate wants to appeal an "inter-facility" classification decision, he sends State Form 9260 to the Director of Classification at IDOC's Central Office in Indianapolis. This is how the instructions appear at the top of the form:

> INSTRUCTIONS: 1. Intra-Facility classification appeals, send to facility head
> 2. Inter-Facility-Department classification appeals, send to: Director of Classification
> 302 West Washington Street, Room E334
> Indianapolis, Indiana 46204

### B. Mr. Toney's Use of the Classification Process

Mr. Toney was placed first placed in the restrictive housing unit in November 2014, one year before the Classification Policy took effect. Dkt. 41-1 at ¶¶ 1–3. In December 2015 he was transferred to DWRH/A housing. *Id.* at ¶ 7. He attested that staff never explained the Classification Policy to him, and he did not have access to it due to his placement in segregation. *Id.* at ¶¶ 4–5.

On September 21, 2017, Mr. Toney had a classification review hearing. Dkt. 26-6 at ¶ 14; dkt. 26-8 at 1. The classification hearing report issued on the same day as the hearing—September 21, 2017—recommended that

---

9260); dkt. 26-7 at 25 (Classification Policy); *Payton v. Ward*, No. 1:18-CV-03101-JPH-MPB, 2020 WL 2571492, at *1 (S.D. Ind. May 20, 2020) (explaining that IDOC changed the title its facility heads from "Superintendent" to "Warden"). For ease of reference and consistency, the Court uses the term "Warden" unless otherwise indicated.

Mr. Toney, "Remain DWRH/A." Dkt. 26-8 at 1. Mr. Toney received notice of the decision on October 15, 2017. *Id.* at 2.

On October 23, 2017, Mr. Toney completed State Form 9260 appealing the decision from the September 21, 2017, classification hearing. *Id.* at 2. In the appeal, Mr. Toney stated that he had been wrongfully terminated from the ACT program and requested placement in general population. *Id.* Mr. Toney sent the form to the Director of Classification. Mr. Toney attested that because he did not have access to the classification policy, he "did not understand the requirements for filing classification appeals" when he submitted the classification appeal form. Dkt. 41-1 at ¶¶ 5–6.

On October 31, 2017, Sonya Phipps from the Classification Division wrote to Mr. Toney regarding the State Form 9260 that he had completed on October 23, 2017, and submitted to the Director of Classification, "You must first appeal a classification decision to the Warden. If you do not agree with response of the Warden, you may then appeal to the Director of Classification at Central Office."[3] Dkt. 26-8 at 3. The letter did not state whether Mr. Toney could resubmit this appeal.[4] *Id.* Regardless, by the time Mr. Toney received

---

[3] This contradicts the Classification Policy, which states that the "Superintendent" (now the Warden) the final decisionmaker for intra-facility classification decisions. Dkt. 26-7 at 26.

[4] The Grievance Policy provides that inmates have five days to make necessary revisions to deficient grievance forms. Dkt. 26-4 at 10. The Classification Policy has no similar timeframe for fixing mistakes; it only states the appeal must be submitted within ten days of the decision. Mr. Toney's appeal would have been due by October 27, dkt. 26-7 at 26, and thus would have been untimely if resubmitted after he received Ms. Phipps' letter.

6

that response, the 10-day time limit for submitting a written appeal had lapsed. Dkt. 26-7 at 26.

According to Wabash Valley classification specialist Matt Leohr, Mr. Toney "did not appeal his placement on restricted status housing again after his attempt failed to follow the applicable procedures after the September 21, 2017 classification hearing." Dkt. 26-6 at ¶ 15.

### C. Subsequent Classification Reviews

The defendants have supplemented the record to include all classification reviews Mr. Toney received between September 2017 and January 23, 2019. Dkt. 39-2 at 1, 3–4, 6–7, 11–20, 22, and 25. According to Mr. Leohr, "Angus Toney was required to appeal to the Warden for any review he received from September 2017 to January 2019 to exhaust his administrative remedies in accordance with policy." Dkt. 39-1 at ¶ 9.

All 30-day status reports were prepared by caseworker Dugan and concluded, "If there are any questions regarding this report, they may be directed to either the Unit Caseworker or" either the Casework Manager or UTM Snyder. *Id.*

There are five classification hearing reports in the record. Dkt. 39-2 at 2 (September 1, 2017, report); 5 (November 1, 2017, report); 10 (February 1, 2018, report); 21 (November 20, 2018, report); and 26 (January 23, 2019, report). The classification hearing report from November 1, 2017, is different from the other reports, in that the type of classification hearing was "ReClass" rather than "DWRH/A Status Review Initiated." *Compare id. at* 1, 5. In the

7

section under "I submit this request for reclassification" it states, "PR-X22-ACT-PROGPA02-D-I." *Id.* at 5.

On February 1, 2018, Mr. Toney received an "annual review hearing notification", State Form 7262. Dkt. 39-2 at 8. The notification informed Mr. Toney,

> In Conjunction with this classification hearing, you have the following rights: (1) To appear in person. (2) To present pertinent information that will be used at the hearing. (3) To have all aspects of the classification discussed. (4) To be notified in writing of the results of the classification hearing.

*Id.* The annual review took place that day, and the recommendation was for Mr. Toney to remain in administrative segregation. *Id.* at 10.

The next classification hearing took place on December 10, 2018. *Id.* at 23. The result of that hearing was "Transfer to Phase 5 of the ACT Program." *Id.* This hearing set into motion Mr. Toney's transfer out of the restrictive housing unit. *Id.* at 23–26.

### III.
### Analysis

#### A. Applicable Law

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted). "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota,* 962 F.3d 325, 329 (7th Cir. 2020).

While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. If grievance policy language is ambiguous, or if grievance provisions are vague or confusing, any ambiguity is resolved in favor of the prisoner, because the burden of proof rests with the defendants to show an administrative process was available. *Miles v.* Anton, 42 F.4th 777, 781–82 (7th Cir. 2022); *see also Thomas v. Reese,* 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

## B. Discussion

The defendants have presented no evidence that Mr. Toney knew about the Classification Policy or any process to appeal his classification prior to October 2017. The designated evidence shows that inmates are informed of the IDOC's Classification Policy only during orientation or by consulting a copy on file in the library. Dkt. 26-6 at ¶ 12. Here, Mr. Toney was in segregation when the Classification Policy was implemented in 2015 and did not have access to the library, and there is no designated evidence showing that he knew before October 23, 2017, that he could appeal his placement in segregation.

On that date, Mr. Toney submitted a classification appeal challenging the September 21, 2017, classification decision. Dkt. 26-8 at 2. He filed his appeal on a State Form 9260. The instructions on the top of that form are not clear. Again, here are the instructions:

> INSTRUCTIONS: 1. Intra-Facility classification appeals, send to facility head
> 2. Inter-Facility-Department classification appeals, send to: Director of Classification
> 302 West Washington Street, Room E334
> Indianapolis, Indiana 46204

Dkt. 26-8 at 2. There is no punctuation between items (1) and (2), creating ambiguity as to whether the appeal could be sent to the IDOC Central Office regardless of the intended recipient. There is nothing on the form defining "intra-facility" versus "inter-facility-department." The form uses the term "facility head" instead of the much more common "Warden." Mr. Toney attested that because he had no opportunity to review the Classification Policy and no one explained the appeal process to him, he did not understand the

10

requirements for filing classification appeals when he filed his appeal of the September 21, 2017, report of classification hearing. Dkt. 41-1 at ¶¶ 5–6.

In response to his appeal form, Mr. Toney received a letter dated October 31, 2017, that said—in plain language—he "must first appeal a classification decision to the Warden." Dkt. 26-8 at 3. This shows that as of the receipt of this letter, in November 2017 at the latest, Mr. Toney knew there was an available administrative process to challenge his placement in segregation.[5] Crediting Mr. Toney's testimony and construing the ambiguous instruction language in his favor, the Court finds that the administrative process was not available to Mr. Toney until November 2017, after he received the October 31 letter. *Miles*, 42 F.4th at 782.

Defendants' designated evidence further shows that Mr. Toney received multiple reviews between September 21, 2017 (when he submitted the classification appeal) and January 2019 (when he was reclassified to general population and removed from restricted housing), but he did not attempt to appeal any of them.  Many of the reviews were 30-day status reports that Mr. Toney was not obligated to appeal as there is no designated evidence showing that Mr. Toney knew or should have known that the 30-day reviews were appealable. The form is titled "Review" rather than "decision" and is not signed by the Classification Supervisor. Dkt. 39-2 at 1; dkt. 26-7 at 25 (noting inmate can appeal after he receives classification decision from classification

---

[5] It is not clear in the record when Mr. Toney received Ms. Phipps' letter, but presumably it was not the same day it was mailed.

supervisor). The 30-day status reports that he received only note that the inmate may ask questions about the report, not that he can appeal the decision. *See, e.g.*, dkt. 39-2 at 1. Moreover, the Seventh Circuit has determined it "was unclear whether [a 30-day review] could be appealed" before IDOC added language to the review forms in February 2019 explaining that inmates could appeal the 30-day reviews. *Crouch v. Brown*, 27 F.4th 1315, 1319 (7th Cir. 2022); *see also id.* oral argument at 10:51–11:12 (deputy attorney general explaining that it is unclear whether an inmate could appeal 30-day reviews prior to February 2019, but he would not have been expected to because it was neither in the Classification Policy nor on the review form).[6] Mr. Toney was not obligated to appeal the 30-day status reports in order to exhaust his administrative remedies, so the Court looks to other classification reviews that were conducted between September 21, 2017 and January 2019.

Mr. Toney received four classification hearing reports after October 2017. Dkt. 39-2 at 5 (November 1, 2017); 10 (February 1, 2018); 23 (December 10, 2018); and 26 (January 23, 2019). The November 1, 2017, classification hearing report did not discuss Mr. Toney's placement in restricted housing but rather whether he should be able to participate in the ACT Program.[7] Dkt. 39-2

---

[6] Available at Seventh Circuit Court of Appeals, Public Access to Oral Argument recordings, http://media.ca7.uscourts.gov/oralArguments/oar.jsp (Search by Case Number 21-2422).

[7] As the Seventh Circuit explained in *Isby v. Brown*, the ACT Program is designed to help inmates make better decisions. 856 F.2d 508, 516 (7th Cir. 2017). Once inmates reach the fifth and last phase of the ACT Program, they are released from the restrictive housing unit and transferred to a different unit or facility. *Id.*

at 5. Recall that part of Mr. Toney's October 23, 2017, appeal complained that he was improperly removed from the ACT Program. Dkt. 26-8 at 2. Given the close timing between Mr. Toney's appeal and this decision to place him back in the ACT program, the Court finds that Mr. Toney would not have been on notice that this was a *housing* classification decision that he could or should appeal.

On February 1, 2018, Mr. Toney was advised that he was having an annual review hearing at which he could appear, present relevant information, and "have all aspects of the classification discussed." *Id.* at 8. The hearing was held that day, and it was decided that Mr. Toney would remain in administrative segregation. *Id.* at 10. Mr. Toney could have appealed this decision, but he did not.

In summary, reviewing the evidence in the light most favorable to Mr. Toney, administrative remedies were not available to him until November 2017, when he received a letter in response to his State Form 9260 submission that explained the form should be submitted to the warden. The next review that triggered an obligation to exhaust his administrative remedies was Mr. Toney's annual review on February 1, 2018. Accordingly, the defendants' motion for summary judgment is **granted** as to Mr. Toney's placement in the restrictive housing unit after February 1, 2018.

## IV.
## Conclusion and Further Proceedings

The Court has considered the supplementary evidence in support of the defendants' motion for partial summary judgment for failure to exhaust

13

administrative remedies for classification decisions after September 21, 2017.

For the foregoing reasons, the defendants' motion for summary judgment is **granted in part and denied in part**. Mr. Toney is entitled to summary judgment with respect to the claim that administrative remedies were not available to challenge his classification before November 2017 and that further no duty to exhaust arose until February 1, 2018. The defendants are entitled to summary judgment as to Mr. Toney's failure to exhaust administrative remedies with respect to his placement in the restrictive housing unit after February 1, 2018.

This case will now proceed on the merits as to Mr. Toney's due process claims for his placement in the restrictive housing unit between November 2014 and February 1, 2018. The magistrate judge is requested to set this matter for a telephonic status conference to discuss a case management plan.

**SO ORDERED.**

Date: 10/31/2022

                                            *James Patrick Hanlon*
                                            James Patrick Hanlon
                                            United States District Judge
                                            Southern District of Indiana

Distribution:

ANGUS JAMES TONEY
162450
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only


All Electronically Registered Counsel

Magistrate Judge Dinsmore